## CROWN ORCHARD CO., Inc., v. DENNIS et al.

(Circuit Court of Appeals, Fourth Circuit. December 17, 1915.)

No. 1371.

1. Courts ⬦312—Jurisdiction of Federal Court—Suit by Assignee—"Assignee of Chose in Action."

A suit by the grantee of the standing timber on a tract of land from a prior grantee to enjoin the cutting and conversion of the timber by another is not one brought as "assignee of a chose in action," within the meaning of Judicial Code (Act March 3, 1911, c. 231) § 24, 36 Stat. 1091 (Comp. St. 1913, § 991), but one to prevent waste, and is within the jurisdiction of a federal court, where the requisite diversity of citizenship exists between the parties, without reference to the citizenship of complainant's grantor.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 865–875; Dec. Dig. ⬦312.]

2. Logs and Logging ⬦3—Conveyance of Standing Timber—Construction—Time for Removal.

A conveyance of the timber on a tract of land gave the purchaser eight years from its date in which to cut and remove the same, and further provided that in case it was not cut and removed within that time he should "have such additional time as may be desired * * * but * * * shall during the extended period pay interest on the original purchase price * * * year by year in advance. * * *" Held, that such provision was plain and unambiguous and could not be varied by parol evidence, that it entitled the purchaser to an extension on the terms stated as a matter of right for such time as might be reasonably desired, and that such right was not conditioned on his having commenced to cut the timber during the eight years.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⬦3.]

3. Logs and Logging ⬦3—Conveyance of Standing Timber—Contract—Tender of Performance—Sufficiency.

A tender by the purchaser of the first year's interest at the expiration of the eight years, and its unqualified refusal, was sufficient to preserve his right to the extension, without the necessity of its renewal in subsequent years.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⬦3.]

4. Injunction ⬦114—Parties—Suit to Restrain Waste.

A grantee of the purchaser after the expiration of the eight years succeeded to all his rights, including the right to maintain a suit in equity to prevent by injunction the cutting of timber by another; and

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it is not a defense to such suit, which is one to prevent waste, that the exercise of the right of extension and the period of such extension were left by the contract optional with the purchaser.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. ☞114.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry G. Connor, Judge.

Suit in equity by the Crown Orchard Company, Incorporated, against William H. Dennis and others. Decree for defendants (220 Fed. 516), and complainant appeals. Reversed.

R. L. Montague, of Richmond, Va., Ernest L. Visanska, of Charleston, S. C., and L. D. Lide, of Marion, S. C. (Smythe & Visanska and Octavus Cohen, all of Charleston, S. C., on the brief), for appellant.

B. A. Hagood, of Charleston, S. C., and W. P. Pollock, of Cheraw, S. C., for appellees.

Before PRITCHARD and KNAPP, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. The material facts appear to be these: E. J. Dennis, Sr., and A. H. Dennis, his wife, were the owners as tenants in common of a tract of land in Berkeley county, S. C., containing about 660 acres. By a "deed and contract" executed May 5, 1903, they conveyed, with certain reservations, all the timber on this tract of a specified size to Freeman S. Farr, trustee. September 24, 1904, Farr conveyed the timber rights thus acquired, together with the timber rights on a number of other tracts, to the Oneida Timber Company, a South Carolina corporation; and this company, on June 30, 1910, conveyed the same, with the standing timber on several other tracts, to the Midland Timber Company, also a South Carolina corporation. Later, on June 28, 1913, the timber rights in controversy were conveyed by the Midland Timber Company to the Crown Orchard Company, Incorporated, a Virginia corporation, which brings this suit. The case mainly turns upon the construction of the following paragraph in the original conveyance:

"That the said second party, his heirs, executors, administrators, and assigns, shall have, and the same is hereby granted to him or them, the period of eight (8) years, beginning from the date hereof, in which to cut and remove the said timber from the said land, and that in case the said timber is not cut and removed before the expiration of said period, then that the said second party, his heirs, executors, administrators, or assigns, shall have such additional time as may be desired for cutting and removing said timber; but, in the last-mentioned event, the said second party, his heirs, executors, administrators, or assigns, shall, during the extended period, pay interest on the original purchase price above mentioned, year by year, in advance, at the rate of six (6) per cent. per annum."

The Midland Timber Company was the owner of the timber rights in question when the 8 years expired, and no timber had been cut during that period. In the meantime E. J. Dennis had died intestate, and title to the land had vested in his widow and children. It also appears that one of the sons, the defendant William H. Dennis, had

conveyed his interest to his brother, E. J. Dennis. On the 29th of April, 1911, the Midland Timber Company, claiming the right under the above provision in the conveyance to "such additional time as may be desired," served upon the several owners of the land a notice to the effect that it desired 25 years' additional time in which to cut and remove the timber conveyed, and to use and enjoy the other privileges and easements granted, and offered to pay to the owners the sum of $90, being 6 per cent. for one year upon the consideration of $1,500 paid in 1903. Subsequently, and on or about the 5th of May, 1911, there was a tender of the money, which was refused. The record does not indicate that any particular reason was assigned for refusing to grant an extension and accept the money offered, though the owners apparently took the position that the right to an extension had been lost because the cutting and removal of the timber had not been commenced within the 8 years. Under date of December 2, 1913, the owners of the land executed to William H. Dennis, for the stated consideration of $2,000, a conveyance of the timber on this tract, and he about that time began cutting the same. In January, 1914, this suit was commenced and a temporary injunction obtained. The trial resulted in a dismissal of the complaint, on grounds which will be referred to later, but the injunction was continued pending appeal to this court.

[1] At the threshold of the case is the contention, made for the first time in this court, that the suit is brought by the assignee of a chose in action whose assignor could not sue in a federal court, because it is a citizen of the same state as defendants, and therefore, under section 24 of the Judicial Code, the court below was wholly without jurisdiction. Whether this contention is well founded depends in our judgment upon the nature of the suit and the relief sought by complainant. We deem it unnecessary to determine the precise title or estate which was granted by the Dennises, and it may be assumed, as the defendants contend, that the provision for additional time was a mere option contract. And it may also be assumed that an action to enforce an executory contract relating to real estate, or for the specific performance of such a contract, comes within the statutory prohibition.

But we are of opinion that the case at bar is not of that character, and this seems to be made clear by examination of the pleadings. As appears from the bill of complaint, the sole purpose of this suit is to prevent by injunction trespass upon the timber in question by William H. Dennis, one of the defendants. He had no title to the land, or any part of it, when the other defendants, in December, 1913, executed a timber deed to him under which he seeks to justify the cutting operations which were stopped by the temporary injunction. The owners of the land were made defendants, apparently because the Supreme Court of South Carolina had held on the first appeal in the Prettyman Case, 93 S. C. 13, 75 S. E. 1012, that the landowner is a necessary party in all suits where standing timber is involved, and the only allegation against them is that they claim some interest in the matter in controversy. Nothing is set out in the bill which looks to

specific performance, or the enforcement of a contract obligation, and the answer is equally wanting in allegations appropriate to a suit for that purpose. In short, we are of opinion that the case made by the pleadings, and by the proof as well, comes within the rule laid down in Ambler v. Eppinger, 137 U. S. 480, 11 Sup. Ct. 173, 34 L. Ed. 765, which is cited with approval in the later case of Brown v. Fletcher, 235 U. S. 589, 35 Sup. Ct. 154, 59 L. Ed. 374.

It is true that the Ambler Case was an action at law to recover damages for trespass and conversion by the cutting of timber, while this is a suit in equity to prevent such trespass and conversion on the ground that it would result in irreparable injury for which there is not adequate remedy at law. But we are unable to see any substantial difference between the two cases so far as the question of jurisdiction is concerned. The essential basis is the same in both of them, and it cannot be said that the latter any more than the former is brought upon a chose in action. However, we think all doubt is put at rest by the recent decision of the Supreme Court in Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, which deals with a case of striking similarity to the one before us, and holds that it is not a suit for specific performance, but simply one to protect the property which complainant claims to own. The court says:

"Rightly understood, this is not a suit for specific performance. Its purpose is not to enforce an executory contract to give a lease, or even to enforce an executory promise in a lease already given, but to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction. The complaint is not that performance of some promised act is being withheld or refused, but that complainants' vested freehold right is being wrongfully violated and impaired in a way which calls for preventive relief. In this respect the case is not materially different from what it would be if the complainants were claiming under an absolute conveyance rather than a lease. In a practical sense the suit is one to prevent waste, and it comes with ill grace for the defendants to say that they ought not to be restrained because perchance the complainants may some time exercise their option to surrender the lease."

In the light of these authorities we think it clear that the case at bar is within the jurisdiction of a federal court, because it does not belong to the class of cases referred to in section 24 of the Judicial Code.

[2] Coming to the merits of the controversy, we meet at once the question whether the right to an extension was forfeited by failure to commence cutting the timber within 8 years from the date of the grant. If this question be answered in the affirmative, the case is of course at an end, and the decree of the trial court should be affirmed. But we are of opinion that the question should not be so answered. The terms of the conveyance plainly contemplate an extension of the 8-year period named, not upon condition that cutting be commenced within that period, but as a matter of right which the grantee or his assigns might exercise in their discretion by paying the stipulated sum "year by year in advance." There is no ambiguity in the language providing for additional time, and we therefore perceive no ground upon which parol evidence was admissible to show the understanding of the parties as to when cutting should be commenced. Indeed, such

evidence tended to vary, if not to contradict, the written instrument, and for that reason was improperly received. The grantor was a lawyer of large experience in the preparation of timber contracts, and it must be assumed that he understood the nature and extent of the rights he was granting, and meant precisely what the written words imply. If it was intended that there should be no extension unless cutting were commenced within the 8 years, it is extremely difficult to believe that such a condition would not have been plainly expressed; and it is equally difficult to believe that he would not have fixed some shorter time within which cutting was to be commenced, if he did not intend that it should be optional with the purchaser.

Upon the point now considered we find no difference between this case and the Prettyman Case, so much discussed by counsel. 97 S. C. 247, 81 S. E. 484. The corresponding provision of the deed in that case is almost identical with the paragraph above quoted, except that the time period named was 10 years from date. And the precise claim was made that the grantee and its assigns were not entitled to an extension beyond the first period, because they did not commence to cut and remove the timber within that period. The trial court in a careful opinion rejected the contention, and this opinion was approved and adopted by the Supreme Court of the state on appeal.

We think the case at bar, like the Prettyman Case, is clearly distinguishable from other South Carolina timber cases in which parol testimony has been received. When the contract or conveyance fixes a definite period *after the grantee has commenced cutting,* the courts properly allow parol proof of the intention and understanding of the parties as to when cutting was to begin, or else hold that a reasonable time was necessarily implied, since otherwise the grantee could delay cutting indefinitely and thus defeat the purpose of the grantor. In other words, parol proof is admissible in such a case for the purpose of determining when the period for removal commences. Such proof does not vary or contradict the written instrument, but merely supplies an omitted provision. In this case the period of 8 years is specified to begin "from the date hereof." Both the beginning and the end of the named period are thus made certain by the grant itself, and so there is no ground or reason for the parol proof which was admitted in the Flagler Case, 89 S. C. 328, 71 S. E. 849, for example, and other cases where the contract was silent or indefinite as to the time of beginning.

It is not necessary for us to affirm that the Prettyman Case established a rule of property in South Carolina which we are bound to apply. We follow it upon the question in dispute, not merely out of deference to the court which decided it, but because the decision commends itself to our judgment as just and correct.

[3] It must therefore be held that the Midland Timber Company, under the plain terms of the deed, had the right to additional time for cutting and removing the timber by complying with the condition on which that right could be exercised, namely, the payment of 6 per cent. per annum upon the original consideration. This sum was duly tendered to the owners of the land and by them refused. They

did not put their refusal upon the ground that the company had asked for a longer extension than it was entitled to, or upon any other ground of objection which the company had in its power to remove. Their contention evidently was, as already stated, that the right to any extension had been lost by failure to commence cutting within the 8 years, and their refusal was made in such manner and under such .circumstances as relieved the company from renewing the tender yearly thereafter. The law does not require a vain thing, and it was not necessary, after the first year, to go through the form of making an offer which the owners had in effect declared they would not accept. In short, the Midland Timber Company did all that was needful to comply with the condition of the deed and thus preserve its right to have additional time for cutting and removing the timber. And this right continued without impairment until it was transferred to complainant in June, 1913. For we think it clear under the conceded facts of this case that the failure to begin cutting in the meantime—that is, within the next 2 years or thereabouts after the 8-year period expired —did not exhaust the additional time to which the Midland Timber Company was entitled; and this was equally the case as to the period between the transfer to complainant and the bringing of this suit. In other words, if the right to an extension survived the failure to commence cutting during the 8 years, as we hold it did, that right was not subsequently lost by failure to begin cutting in the interval before the commencement of this suit. Stated in another way, if the Midland Timber Company had continued its ownership of the timber in question, without transfer to complainant, its right to cut and remove would not have been forfeited by lapse of time after the expiration of the 8-year period.

[4] But the transfer actually made in June, 1913, put complainant in the place of the Midland Timber Company and had the effect of giving to it all the rights which its assignor possessed, including the right to maintain a suit to prevent by injunction the taking of its property. On the face of it complainant was entitled to the relief sought, for the situation then existing was one which ordinarily would be recognized as justifying the interference of a court of equity. Complainant had acquired all the rights, privileges, and interests which the Dennises conveyed to Farr, the very essence of which was the right to cut and remove the timber originally paid for; and this right had been preserved by the action of its predecessor in complying, so far as it could, with the condition upon which was granted such additional time as might be desired. It found, a few months after its ownership was acquired, that the defendant William H. Dennis had put up a small sawmill on the tract and was commencing to cut the timber which complainant claimed as belonging to itself, and it thereupon filed an appropriate bill and obtained an injunction to prevent further trespass upon and waste of its property. In our judgment it is entitled to a permanent injunction, unless the grounds upon which injunction has been denied are sufficient in the exercise of judicial discretion for refusing relief, and those grounds will now be briefly examined.

229 F.—42

In the first place, some doubt is suggested as to the charter power of complainant to acquire the rights conveyed by the Midland Timber Company; but we deem it sufficient to say, without discussing the point, that examination of the charter satisfies us that the legal capacity of complainant is ample, even if it be conceded that defendants can raise the question of ultra vires.

It is also suggested, as bearing upon the asserted lack of equity, that complainant is a corporation of small capital, that it is not in the business of cutting timber, and that it has no other timber property in South Carolina. But we fail to see how facts of this sort afford a reason for denying to it the protection of its property. What difference does it make whether complainant's capital is large or small, or whether it is equipped for lumbering operations? Granting that it is not, it appears nevertheless to be no worse off in that regard than any of its predecessors. The original grantee was evidently known by the grantors to be buying up timber lands as trustee for the purpose of transferring the rights acquired to other parties. The Oneida Timber Company and the Midland Timber Company are both holding companies, and neither of them has carried on the business of cutting timber for market. Moreover, the argument here referred to seems to prove too much, since it implies that, if the suit were brought by a company strong financially and suitably equipped for cutting the timber from this tract, it would presumably be entitled to a permanent injunction. We are convinced that want of equity, as that phrase is commonly understood, cannot be predicated upon the facts here considered. If the right to cut and remove the timber from this tract was preserved for an additional time beyond the 8 years by the tender and offer of the Midland Company in accordance with the terms of the deed, and if that right was transferred to complainant and continued in force up to the time when this suit was brought, it should now be protected from invasion by the effective interposition of a court of equity, although complainant may not itself be able to cut and remove the timber or have the intention to do so.

As to other reasons assigned for dismissing the complaint we refer again to the decision of the Supreme Court, rendered since this case was heard below, in Guffey v. Smith, supra. Except that it did not involve the right of extension, which we hold in this case survived the failure to begin operations within the 8-year period, it appears to us to sustain fully the plaintiff's contention. In that case the want of mutuality was asserted because the lessee had the reserved option to surrender the lease at any time, just as in this case it is said there is want of mutuality because the grantee has the option of an extension and may exercise it for one or more years and then discontinue at pleasure; that is, since the Dennises cannot enforce an extension or control the period of extension, therefore it is claimed to be inequitable to enforce an extension against them at the will and in the interest of the grantees. With reference to this question the Supreme Court says:

"It next is insisted that according to the general principles and rules of equity administered in the federal courts the surrender clause constitutes an

insuperable obstacle to granting the relief sought; the argument being that, as the complainants have a reserved option to surrender the lease at any time, it cannot be specifically enforced against them and therefore cannot be similarly enforced in their favor. The rule intended to be invoked has to do with the specific performance of executory contracts, is restrained by many exceptions, and has been the subject of divergent opinions on the part of jurists and text-writers. * * * We think this option, which has not been exercised, and may never be, is not an obstacle to the relief sought."

Without quoting more at length from this recent decision of the Supreme Court, it is sufficient to say that the principles therein announced appear to warrant us in holding that the instant case is not one for specific performance, but for injunctive relief; that it is a proper case for injunction, because complainant has no adequate remedy at law; that the extension period provided for in the deed does not create a tenancy at will; that there is no want of mutuality; that subsequent grantees succeed to all the rights of the original grantee; that enforcement of the rights conveyed would not be harsh or unconscionable; that the value of the timber at the date of the sale must be taken into account in determining whether the consideration is adequate; and that the South Carolina decisions, so far as they establish a rule of property, are binding upon this court.

As to the alleged inadequacy of consideration, which is urged as one of the reasons for refusing an injunction, it may be noted that 10 years later the owners of the land granted to William H. Dennis substantially the same right to cut and remove the timber from this tract for $2,000, which he had not paid when the case was tried, and that in the answer of the Dennises it is denied that the matter in controversy herein exceeds the sum and value of $3,000. In view of these facts, and bearing in mind that the owners have had the use of $1,500 since 1903, we are unable to see that it is unconscionable or in any sense inequitable to enforce against them the rights originally conveyed to which the complainant has succeeded.

The opinion of the court below holds "that in no aspect of the case is the complainant entitled to a decree extending the period for 25 years," and we are not prepared to say that this is an erroneous conclusion. The right granted in this regard is measured by the terms of the deed, which are that the grantee and his assigns "shall have such additional time as may be desired for cutting and removing said timber," by paying in advance the yearly sum of $90. But this language should be so construed as to give effect to the intention of the parties. Neither the Midland Timber Company, nor the complainant as its successor, could exercise the right to an extension for a period fixed by an arbitrary or capricious desire. It must be an honest and justifiable desire, not a pretended or fantastic desire. In short, we take the phrase to mean such additional time as may be *reasonably* desired by the party having the right to an extension. That a considerable period was in contemplation, and that the extension should have reference to substantial needs and business requirements, is inferable from the use of the phrase "as may be desired," and from the provision for paying the 6 per cent. "year by year." But the language is not to be stretched beyond its fair import, and this excludes an insincere or un-

real desire. Manifestly, in this view the additional time which may be allowed becomes a question of fact, to be determined by consideration of all the circumstances and the application of the rule of reason.

Without prolonging the discussion, we sum up our conclusion as follows:

First. The right to an extension was not lost by failure to commence cutting within the 8 years named in the conveyance.

Second. The complainant has succeeded to all the rights of the original grantee, including the right to additional time for cutting and removing the timber, and the latter right has not been lost through lapse of time or otherwise.

Third. The complainant is entitled to a permanent injunction to prevent an invasion of its property rights because it has no adequate remedy at law.

Fourth. It will be for the court below, to which the case will be remanded, to determine by such means as may be deemed most appropriate the maximum period of extension to which complainant is entitled and to take further proceedings in accordance with this opinion.

Reversed.